UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARASUE ROETERS,

                                    Plaintiff,

v.                                                                  1:23-CV-0868
                                                                    (GTS/DJS)
CVS ALBANY, L.L.C.; and CVS PHARMACY, INC.,

                                    Defendants.

_____

CVS ALBANY, L.L.C.; and CVS PHARMACY, INC.,

                                    Third-Party Plaintiffs,

v.

D. F. PRAY, INC.,

                                    Third-Party Defendant.

_____

APPEARANCES:                                            OF COUNSEL:

FINKELSTEIN & PARTNERS, LLP                    KENNETH B. FROMSON, ESQ.
  Counsel for Plaintiff                                LAWRENCE D. LISSAUER, ESQ.
1279 Route 300
P.O. Box 1111
Newburgh, NY 12550

CULLEN & DYKMAN LLP                              ERIN R. FROST, ESQ.
  Counsel for Defendants/Third-Party Plaintiffs       JOHN COSGROVE, ESQ.
One Battery Park Plaza, 34th Floor
New York, NY 10004

80 State Street, Suite 900                              CHRISTOPHER E. BUCKLEY, ESQ.
Albany, NY 12207                                       TIMOTHY CHORBA, ESQ.

GOLDBERG SEGALLA LLP                            ROBERT C. SHEA, ESQ.
  Co-counsel for Defendants/Third-Party Plaintiffs
200 Garden City Plaza, Suite 520
Garden City, NY 11530

PECKAR & ABRAMSOM                        HUI CHEN, ESQ.
  Counsel for Third-Party Defendant      RICHARD E. BRIANSKY, ESQ.
28 State Street, Suite 1802
Boston, MA 02109

1325 Avenue of the Americas, 10th Floor   DENIS SERKIN, ESQ.
New York, NY 10019

GLENN T. SUDDABY, United States District Judge

<u>**DECISION and ORDER**</u>

Currently before the Court, in this third-party action filed by CVS Albany, LLC, and CVS Pharmacy, Inc. (collectively "CVS" or "Third-Party Plaintiffs") against D.F. Pray, Inc. ("D.F. Pray" or "Third-Party Defendant"), are the following motions: (1) D.F. Pray's motion to dismiss the Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6); and (2) D.F. Pray's motion to dismiss the subsequently filed Amended Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 31, 51.)  For the reasons set forth below, D.F. Pray's motion to dismiss the Third-Party Complaint is denied as moot, and its motion to dismiss the Amended Third-Party Complaint is granted.

## I.    RELEVANT BACKGROUND

### A.    **Plaintiff's Complaint**[1]

Generally, in her Complaint, Plaintiff asserts claims for personal injury against CVS related to suffering a fall in the parking lot at the relevant location as the result of an alleged presence of oil, mud, water, and/or other sediment on the surface of the parking lot.  (Dkt. No. 2.)  Plaintiff's Complaint is not at issue related to the currently pending motions.

---

[1]    This action was removed from the New York State Supreme Court in Greene County on July 19, 2023, based on diversity of citizenship under 28 U.S.C. § 1332.  (Dkt. No. 1.)

2

B.     **CVS' Third-Party Complaint**

Generally, in CVS' Third-Party Complaint, CVS asserts the following four causes of action against D.F. Pray: (1) a cause of action claiming that D.F. Pray is contractually obligated to defend, indemnify, and hold CVS harmless for the injuries allegedly suffered by Plaintiff pursuant to a 2012 Master Service Agreement entered into between CVS and D.F. Pray; (2) a cause of action claiming that D.F. Pray is also obligated to indemnify CVS under the common law; (3) a cause of action claiming that CVS is entitled to contribution from D.F. Pray for its proportionate share of liability related to Plaintiff's claims against CVS; and (4) a cause of action claiming that D.F. Pray breached the Master Services Agreement by failing to maintain adequate liability, employer's liability, and worker's compensation insurance. (Dkt. No. 26.)

C.     **Parties' Briefing on D.F. Pray's Motion to Dismiss the Third-Party Complaint**

1.     **D.F. Pray's Memorandum of Law**

Generally, in its motion to dismiss the Third-Party Complaint, D.F. Pray argues that (a) CVS' breach-of-contract and contractual indemnity claims must be dismissed as a matter of law because the Master Services Agreement relied upon by CVS does not cover the relevant project (i.e., the CVS parking lot where Plaintiff alleges she was injured), (b) CVS' contribution and common law indemnity claims must also be dismissed as a matter of law because D.F. Pray owes no duty of care to Plaintiff, and CVS has not alleged that D.F. Pray's work on the project created or exacerbated the conditions that Plaintiff alleges caused her to become injured (i.e., the presence of oil, mud, water and/or sediment in the parking lot), or that the Master Services Agreement displaced their obligation to maintain their property, or that CVS relied to their detriment on D.F. Pray's continued performance of any maintenance, and (c) CVS' claims in

3

general are also barred by the mandatory arbitration provision in the Master Services Agreement. (Dkt. No. 31, Attach. 1.)

> ## 2.     CVS' Opposition[2]

Generally, in opposition to D.F. Pray's motion, CVS acknowledges that the basis for their claims should be the 2017 General Contract for Construction, not the 2012 Master Services Agreement, and indicates that they requested leave to amend the Third-Party Complaint to rectify that error.[3] (Dkt. No. 36, at 2.) CVS nevertheless argues that D.F. Pray had a duty that supports CVS' claims for contribution and indemnification, though they rely on agreements other than the 2012 Master Services Agreement to make their responses as to the contractually based claims. (*Id.* at 3-4.) CVS further argues that they are not bound by any mandatory arbitration provision, relying now on an assertion that they were not a party to the 2017 General Contract for Construction, and, in the alternative, that their causes of action here are not considered a "claim" under the relevant definitions in the 2017 General Conditions of the Contract for Construction. (*Id.* at 4-5.) CVS' arguments in opposition to this motion therefore, by and large, do not address the claims actually asserted in the Third-Party Complaint (which rely on the Master Service Agreement) but rather address why they believe the Amended Third-Party Complaint states a claim upon which relief can be granted.

> ## D.     CVS' Amended Third-Party Complaint

---

[2]     CVS submits their response in the form of an "Affirmation in Opposition." (Dkt. No. 36.) This is in violation of the Court's Local Rules of Practice which clearly state that (a) "all motions and opposition to motions require a memorandum of law" meeting certain requirements that the Affirmation in Opposition does not meet, and (b) "an affidavit must not contain legal arguments." N.D.N.Y. L.R. 7.1(b)(1), (2).

[3]     Permission to file an Amended Third-Party Complaint was granted on October 31, 2024. (Dkt. No. 45.)

Generally, in their Amended Third-Party Complaint, CVS asserts the same four causes of action as asserted in the original Third-Party Complaint but changes the contractual basis for those claims from the 2012 Master Services Agreement to the 2017 General Contract for Construction ("General Contract"), which they allege incorporates the A201-2007 General Conditions of the Contract for Construction ("A201-2007 General Conditions"). (Dkt. No. 47.)

### E.     Parties' Briefing on D.F. Pray's Motion to Dismiss the Amended Third-Party Complaint

#### 1.     D.F. Pray's Memorandum of Law

Generally, in its motion, D.F. Pray argues that (a) the mandatory arbitration provision in the General Contract requires that all of CVS' claims be resolved through arbitration because that contract expressly incorporates disputes between CVS and D.F. Pray that arise out of or relate to the contract, and (b) it owes no duty to Plaintiff related to the contribution and common law indemnification claims for essentially the same reasons discussed in its memorandum of law submitted in support of its first motion. (Dkt. No. 51, Attach. 1.)

#### 2.     CVS' Opposition[4]

Generally, in their opposition, CVS argues that (a) the selection of arbitration as the means of dispute resolution contained in the General Contract is not binding on CVS because CVS was not a party to the General Contract, which was between D.F. Pray and the developer of the relevant CVS project, Zaremba Contractors, LLC, (b) even if CVS can be considered to be bound by the General Contract under the circumstances, they are not required to arbitrate the

---

[4]     CVS' opposition again does not comply with the requirements of the Local Rules. *See, supra,* note 2 of this Decision and Order.

relevant causes of action here because those do not meet the definition of a "claim" used in the

incorporated General Conditions of the Contract for Construction, (c) D.F. Pray owes

indemnification and contribution to CVS because they have alleged that D.F. Pray caused the

relevant condition by negligently constructing, maintaining, installing, and repairing the parking

lot in a manner that created a dangerous condition, and the General Conditions of the Contract

for Construction requires D.F. Pray to both contractually indemnify CVS for personal injury

claims caused by its negligent acts or omissions and to include CVS as an additional insured for

claims caused by D.F. Pray's negligent acts or omissions.  (Dkt. No. 52.)

## II.    GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204,

211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo*

review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice of what the plaintiff's claim is and the grounds upon which it rests.*" *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

7

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[5]

---

[5]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.")

**III.    ANALYSIS**

After careful consideration, the Court grants D.F. Pray's motion to dismiss the Amended Third-Party Complaint for the first reason stated in its memorandum of law (regarding the mandatory arbitration provision in the General Contract). *See, supra,* Part I.E.1 of this Decision and Order. To those reasons, the Court adds the following analysis.

As an initial matter, the Court finds that D.F. Pray's motion to dismiss the original Third-Party Complaint should be denied as moot. That Third-Party Complaint has been superseded in all respects by the Amended Third-Party Complaint (*see, e.g.,* N.D.N.Y. L.R. 15.1), and there is nothing related to that original Third-Party Complaint that is left to dismiss. To the extent that arguments in the parties' papers related to that first motion remain relevant or applicable to the claims asserted in the Amended Third-Party Complaint, the Court has considered them when deciding the motion to dismiss the Amended Third-Party Complaint.

D.F. Pray first argues that CVS' claims must be dismissed because the relevant agreement terms require those claims to be brought in arbitration as opposed to a lawsuit. The parties do not seem to dispute that the General Contract contains a selection of "Arbitration pursuant to Section 15.4 of AIA Document A201-2007" as the means of binding dispute

---

[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

resolution to be applicable to "any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201-2007" related to the project covered by the General Agreement.  (Dkt. No. 47, Attach. 3, at 6.)  CVS argues that (a) it is not bound by this selection because the General Contract was made between a general contractor, D.F. Pray, and a developer, Zaremba Contractors, and therefore CVS was not a party to that agreement, and (b) even if it is bound by the terms of the General Contract, its causes of action for indemnification and/or contribution based on D.F. Pray's negligent performance of the contracted work does not fall under the definition of a "Claim" requiring arbitration under the terms of the General Contract.  (Dkt. No. 52, at 2-3.)

To resolve the question of whether CVS is bound by the terms in the General Contract (and the arbitration selection clause specifically), the Court must look not only to the General Contract, but also to the A201-2007 General Conditions, which is listed as one of the Contract Documents in that General Contract (and which cross-lists the "Agreement"—which, here, is the General Contract—as part of the group of documents that comprise the contract pursuant to those General Conditions).  (Dkt. No. 47, Attach. 3, at 8-9.)  Of note, although CVS does not appear to be a direct party to the General Contract, CVS is party to the A201-2007 General Conditions. Indeed, CVS appears to admit that the terms of the A201-2017 General Conditions apply to them because they argue that D.F. Pray is contractually obligated to indemnify them in this matter, an obligation that is present in those General Conditions.  (Dkt. No. 47, Attach. 4, at 18-19, 31-32.) Moreover, multiple provisions in the General Contract itself suggest that, despite not being a signatory, CVS is not wholly outside the agreement.  For example, the General Contract states that (a) D.F. Pray agrees to avoid any employment or other activities that would give rise to a

conflict of interest, including conducting business with a direct competitor of *CVS*, and must

provide notice to *CVS* (as well as Zaremba) if it does engage in any such conduct, (b) D.F. Pray

agrees to keep the content of the General Contract confidential unless it obtains express written

consent from *CVS*, (c) *CVS* (along with Zaremba) has the right to audit D.F. Pray's financial

records related to performance of the work specified in the General Contract, (d) D.F. Pray is

required to continue to meet all of *CVS*' General Contractor Qualification Process requirements

at all times during the term of the agreement, and (e) any notices to *CVS* pursuant to the General

Contract should be provided to a certain individual at a certain address using a certain method.

(Dkt. No. 47, Attach. 3, at 7-8.)  CVS is also specifically listed as the Project Owner in the

General Contract.  (Dkt. No. 47, Attach. 3, at 2.)  Simply stated, the terms of the General

Contract in their entirety, as well as the incorporation of CVS' A201-2007 General Conditions,

appear to indicate that Zaremba, as the developer for the relevant project, was acting in place of,

or on behalf of, CVS as the Owner of the project site.

     Moreover, in the A201-2007 General Conditions, at Section 1.1.1, it is noted that the

"Contract Documents" consist of multiple things, including the General Conditions themselves.[6]

(Dkt. No. 47, Attach. 4, at 11.)  In Section 1.2.1, it states that "[t]he Contract Documents are

complementary, and what is required by one shall be as binding as if required by all."[7]  (*Id.*)

---

[6]    The General Contract likewise defines the Contract Documents as consisting of the General Agreement and the A201-2007 General Conditions, among other things.  (Dkt. No. 47, Attach. 3, at 3, 8.)

[7]    The General Contract places this in even stronger language, stating that the Agreement and General Conditions (along with other documents) "form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein."  (Dkt. No. 47, Attach. 3, at 3.)  The General Contract therefore makes clear that, in this instance, the Contract Documents are not merely "complementary," but explicitly and fully integrated into the General Contract.

Because the A201-2007 General Conditions are one of the Contract Documents of the General

Contract (and incorporated into that agreement), that means that anything required by the A201-

2007 General Conditions will also be required under the General Contract, and anything required

by the General Contract will be required by the A201-2007 General Conditions. Indeed, the

plain language of Sections 1.1.1 and 1.1.2 of the A201-2007 General Conditions states that the

existence of an "Agreement" (which is contemplated to be between the "Owner" (or CVS) and a

"Contractor" (which in this case, would be D.F. Pray)) is an indispensable part of the Contract

(which is defined as the sum of the Contract Documents), and states that the Contract "represents

the entire and integrated agreement between the parties hereto." (Dkt. No. 47, Attach. 4, at 11.)

This language indicates that, even under the understanding of the A201-2007 General

Conditions, the General Contract and those General Conditions should be considered to be *one

unified contract*, even when not considering the language in the General Contract that explicitly

integrates those General Conditions. All of this leads to the conclusion that CVS would be

bound by the terms in the General Contract as to the relevant project covered by that General

Contract regardless of the fact that they used Zaremba as a developer rather than entering into the

General Contract themselves.[8]

Additionally, Section 13.7 of the A201-2007 General Conditions indicates that "[t]he

Owner [CVS] and Contractor [D.F. Pray] shall commence all claims and causes of action,

---

[8] The Court also notes that Plaintiff's fourth claim for breach of contract arising from D.F. Pray's asserted failure to maintain adequate liability, employer's liability, and workers compensation insurance is specifically premised on a breach of the *General Contract*. (Dkt. No. 47, at ¶ 32.) CVS's assertion that D.F. Pray would be liable to them for breach of the General Contract (to the extent it was not a mistake) appears to constitute an admission that they in fact are subject to the terms of that General Contract.

whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work." (Dkt. No. 47, Attach. 4, at 36.) Although this provision specifically addresses the time limits to bring claims, it does more than merely set those time limits, but also suggests some requirements that a claim or cause of action must meet. Construction of this section requires an assessment of three relevant terms: (1) "claims and causes of action"; (2) "arising out of or related to the Contract"; and (3) "in accordance with the requirements of the final dispute resolution method selected in the Agreement."

As to the term "claims and causes of action" in this section, there are multiple matters of construction that are relevant. First, the use of both "claims" and "causes of action" to describe the activities that are covered by this provision would suggest that "claims" and "causes of action" should not be construed to mean entirely the same thing for purposes of the agreement. Second, the word "claims" in this instance is notably not capitalized, although it is subsequently used in a capitalized version in Section 15. Section 1.3 states that "[t]erms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles, or (3) the titles of other documents published by the American Institute of Architects." (Dkt. No. 47, Attach. 4, at 12.) Because use of the word "claims" in Section 13.7 is not capitalized, the Court should generally construe that its definition is *not* intended to be the definition later expounded in Section 15.1.1. Black's Law Dictionary defines "claim" relevantly as "[t]he assertion of an existing right," "a demand for money, property, or a legal remedy to

14

which one asserts a right," or "[a]n interest or remedy recognized at law." *Claim*, Black's Law Dictionary (12th ed. 2024). Moreover, the Contract Documents do not define the term "cause of action," which has been defined by Black's Law Dictionary as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person," or "a legal theory of a lawsuit." *Cause of Action*, Black's Law Dictionary (12th ed. 2024). Based on these definitions, CVS' assertion of claims for indemnification, contribution, breach of contract, and/or negligence all would be considered "claims" or "causes of action." However, to the extent there exists any ambiguity in the question of whether there was intended to be a material difference between "claim" as used in this section and "Claim" as used in Section 15, such ambiguity must be construed against the drafter, which in this case would be CVS.[9] *See Aukema v. Chesapeake Appalachia, LLC*, 904 F. Supp. 2d 199, 209 (N.D.N.Y. 2012) (Hurd, J.) ("In the event of an ambiguity, a contract will be construed against its drafter since the drafter is responsible for any ambiguity.") (citing *M. Fortunoff of Westbury Corp. v. Peerless Ins. Co.*, 432 F.3d 127, 142 [2d Cir. 2005]).

This construction in the face of ambiguity is important here because the arbitration selection clause in the General Contract states that "[f]or any *Claim* subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A201-2007, the method of binding dispute resolution is as follows…," notably using the capitalized form of "Claim." (Dkt. No. 47, Attach. 3, at 6 [emphasis added].) The language throughout Section 15 (including in the mediation and arbitration subsections) also uses the capitalized "Claim," which leads the Court

---

[9]    The Court acknowledges that the A201-2007 General Conditions are a standard form and that CVS likely did not actually "draft" the terms therein. However, they were the party who chose to use that form, and therefore the same principle applies.

to interpret that language as indicating that only those matters that meet the enumerated definition of "Claim" are subject to the arbitration selection. (Dkt. No. 47, Attach. 4, at 38-40.) The interplay between Sections 13.7 and 15.1.1 and the arbitration selection clause in the General Contract therefore leads to some confusion, because it is not clear how a "claim or cause of action" could be commenced "in accordance with the requirements of the final dispute resolution method selected in the Agreement" if that dispute resolution selection applies by its terms only to "Claims," and "claim" is construed to have a different meaning. Because construing the "claim" used in Section 13.7 as meaning "Claim" as defined in Section 15 both resolves this ambiguity and is more favorable to D.F. Pray (as the party who did not draft these provisions), that is the interpretation the Court will adopt here.

A "Claim" is defined in Section 15.1.1. as "a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract," but it "also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." (Dkt. No. 47, Attach. 4, at 38.) CVS argues that its assertions here do not constitute a "Claim" under this definition because they are not seeking a payment of money, but rather indemnification and contribution. However, the matter of indemnification and contribution, and the question of D.F. Pray's alleged negligence in the performance of the work specified in the General Contract, would almost certainly be considered to be a dispute "arising out of or relating to" the contract (as will be discussed in the next section). It is notably inconsistent for CVS to rely on the indemnity clause in the A201-2007 General Conditions (which, again, constitutes the overall contract in conjunction with the General Contract) and also argue that the question of entitlement to indemnity is not somehow

16

arising out of or related to the contract.  The causes of action asserted in the Third-Party

Complaint therefore meet the enumerated definition of a "Claim" as used in Section 15 of the

A201-2007 General Conditions, and thus the conduct at issue would fall under the arbitration

selection clause of the General Contract.

As to the term "arising out of or related to the Contract," the phrases "arising out of" and

"related to" carry slightly different meanings.  "Arising out of" has been interpreted to imply a

causal connection, an origination from a specified source.  *Rekor Sys., Inc. v. Loughlin*, 19-CV-

7767, 2022 WL 3138942, at *8 (S.D.N.Y. Aug. 5, 2022) (quoting *Coregis Ins. Co. v. Am. Health

Found., Inc.*, 241 F.3d 123, 128-29 [2d Cir. 2001]).  Meanwhile, "relating to" or "related to" "is

typically defined more broadly and is not necessarily tied to the concept of a causal connection,"

and "'[c]ourts have similarly described the term 'relating to' as equivalent to the phrases 'in

connection with' and 'associated with,' and synonymous with the phrases 'with respect to' and

'with reference to.'"  *Rekor Sys., Inc.*, 2022 WL 3138942, at *8 (quoting *Coregis Ins. Co.*, 241

F.3d at 128-29).  As discussed above, particularly as to the claim for contractual indemnity, there

is little doubt that this claim "arises out of or is related to" the contract.  The basis of the

indemnification (and contribution) claims is that D.F. Pray acted with negligence when

performing work under the General Contract, specifically construction of the parking lot where

Plaintiff's alleged injuries occurred, and indeed that it was that negligence that created a defect in

the lot that led or contributed to the conditions that caused Plaintiff's injuries.  (*See e.g.*, Dkt. No.

47, at ¶¶ 12-14.)  The indemnification provision in the A201-2007 General Conditions states that

D.F. Pray is required to indemnify CVS against claims, damages, losses and expenses "*arising

out of* or resulting from performance of the Work, provided that such claim, damage, loss or

expense is attributable to bodily injury, sickness, disease or death . . . but only to the extent caused by the negligent acts or omissions of [D.F. Pray]." (Dkt. No. 47, Attach. 4, at 18 [emphasis added].) This provision further supports the Court's finding that the claims are "arising out of or related to" the contract.

Finally, Section 13.7 also requires that the claims or causes of action shall be commenced "in accordance with the requirements of the final dispute resolution method selected in the Agreement." (Dkt. No. 47, Attach. 4, at 36.) According to its plain meaning, this term binds CVS to the choice of dispute resolution methods chosen in the General Contract (which constitutes the "Agreement" for the purposes of the current matter). CVS argues that, because it did not sign the General Contract, the selection clause in the General Contract does not apply to them; but Section 13.7 contradicts that argument in that it specifically requires CVS to commence any claims or causes of action in accordance with the method selected in the agreement that describes the work being performed. CVS therefore was required by the A201-2007 General Conditions to abide specifically by the dispute resolution selection made in the General Contract. CVS notably does not address this provision in their response papers, despite being fully aware of the content of those General Conditions and having had the opportunity to do so.

Because CVS is subject to the arbitration selection clause in the General Contract for the above reasons, and because the causes of action here meet the relevant contractual definition of a Claim that is covered under such arbitration selection clause, this Court is not the proper forum in which CVS' third-party claims against D.F. Pray should be decided. For these reasons, the

Court finds that dismissal of the Third-Party Amended Complaint is the appropriate course of action.

ACCORDINGLY, it is

ORDERED that D.F. Pray's motion to dismiss the Third-Party Complaint (Dkt. No. 31) is **DENIED as moot**; and it is further

ORDERED that D.F. Pray's motion to dismiss the Amended Third-Party Complaint (Dkt. No. 51) is **GRANTED**; and it is further

ORDERED that the Amended Third-Party Complaint (Dkt. No. 47) is **DISMISSED**.

Dated: August 25, 2025
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge